SYKES, Circuit Judge,
concurring.
This case concerns the proper interpretation of the so-called “venue provision” in the Fair Debt Collection Practices Act (“FDCPA”). Here’s the full text of the statute, with the key language italicized:
§ 1692i. Legal actions by debt collectors
(a) Venue
Any debt collector who brings any legal action on a debt against any consumer shall—
(1) in the case of an action to enforce an interest in real property securing the consumer’s obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or
(2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity—
(A) in which such consumer signed the contract sued upon; or
(B) in which such consumer resides at the commencement of the action.
15 U.S.C. § 1692i (emphases added).
By its terms, § 1692i requires any debt collector who sues on a consumer debt to file suit in the “judicial district or similar legal entity” in which the consumer resides or contracted the debt. But the statute does not define “judicial district,” and the term is difficult to interpret and apply to debt-collection actions filed in state courts, which vary widely in their administrative structures and rules for jurisdiction and venue.
In Newsom v. Friedman, 76 F.3d 813 (7th Cir.1996), we resolved the interpretive difficulty by extrapolating from the Black’s Law Dictionary definition of “judicial district” and also by looking to the jurisdictional, procedural, and administrative rules that govern this kind of litigation in the relevant state court system. The panel majority followed that approach here. We reheard the case en banc to consider whether to overrule Newsom and adopt a different interpretation of the phrase “judicial district or similar legal entity.”
I agree with much of what Judges Hamilton and Posner have written for the en banc court, as well as the court’s decision to overrule Newsom. But I also share some of the concerns expressed by Judge *651 Flaum in dissent, which I understand to be rooted at least in part in principles of federalism. In the end, I arrive at the same conclusion as the majority, though by a somewhat different route.
Section 1692i is an unusual federal statute. As written, it establishes a venue rule for “any legal action” to collect a consumer debt, including debt-collection actions filed in state court. Most suits to collect consumer debts are state-law claims for breach of contract, and most of these actions are filed in state court because they don’t meet the $75,000 amount-in-controversy threshold for invoking the federal court’s diversity jurisdiction. See Fed. Trade Comm’n, Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and ARBITRATION 6 (2010) (“Debt collection lawsuits almost invariably are filed in state courts.... ”); Fed. Reserve Bank of N.Y., Quarterly Report on Household Debt and Credit 15 (Nov.2012) (reporting that the average collection amount was about $1,500 in the first quarter of 2012); see also 28 U.S.C. § 1332. But it’s doubtful that Congress has the power to prescribe procedural rules for state-law claims in state courts. See generally Anthony J. Bellia Jr., Federal Regulation of State Court Procedures, 110 Yale L.J. 947 (2001); Wendy E. Parmet, Stealth Preemption: The Proposed Federalization of State Court Procedures, 44 Vill. L.Rev. 1 (1999).
Of course, when Congress creates a cause of action over which the state courts have concurrent jurisdiction, the state courts are bound by the Supremacy Clause to adjudicate the claim, see Testa v. Katt, 330 U.S. 386, 393-94, 67 S.Ct. 810, 91 L.Ed. 967 (1947), and sometimes this includes the obligation to follow federal procedural rules that are specifically tied to the federal claim. For example, the Supreme Court has held that some federal procedural rules may apply in state-court litigation if the rules are “part and parcel” of the federal cause of action being adjudicated in state court. Dice v. Akron, Canton & Youngstown R.R., 342 U.S. 359, 363, 72 S.Ct. 312, 96 L.Ed. 398 (1952) (holding that the statutory right to a jury trial in actions under the Federal Employers’ Liability Act (“FELA”) applies in Ohio state court despite a state procedural rule requiring that certain factual questions be decided by the court); see also Cent. Vt. Ry. Co. v. White, 238 U.S. 507, 512, 35 S.Ct. 865, 59 L.Ed. 1433 (1915) (holding that a FELA provision allocating the burden of proving contributory negligence to the defendant applies in state court despite a contrary state procedural rule).
The Court has also held that state procedural rules may be displaced when they conflict with or unnecessarily burden the substance of a federal cause of action being litigated in state court. See, e.g., Felder v. Casey, 487 U.S. 131, 150, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (holding that a state law imposing a 120-day notice-of-injury prerequisite for claims against governmental defendants is preempted in actions under 42 U.S.C. § 1983); Brown v. W. Ry. of Ala., 338 U.S. 294, 298-99, 70 S.Ct. 105, 94 L.Ed. 100 (1949) (barring application of a state-court pleading rule that interfered with the plaintiffs substantive federal rights).
But these cases involved federal claims being adjudicated in state court. It’s an open question whether Congress has the power to prescribe procedural rules for state-law claims in state court. The Supreme Court has twice noted the issue but declined to decide it. In Jinks v. Richland County, 538 U.S. 456, 123 S.Ct. 1667, 155 L.Ed.2d 631 (2003), the Court addressed a constitutional challenge to a provision in the supplemental jurisdiction statute that tolls the statute of limitations on a supplemental state-law claim “while the claim is *652 pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.” 28 U.S.C. § 1367(d). The Court held that the tolling provision is “necessary and proper for carrying into execution Congress’s power ‘[t]o constitute Tribunals inferior to the supreme Court,’ U.S. Const., Art. I, § 8, cl. 9, and to assure that those tribunals may fairly and efficiently exercise ‘[t]he judicial Power of the United States,’ Art. Ill, § 1.” Jinks, 538 U.S. at 462, 123 S.Ct. 1667. The challenger had also argued that § 1367(d) violates the principles of state sovereignty articulated in Printz v. United States, 521 U.S. 898, 918-22, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), see also New York v. United States, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), and that Congress lacks the authority to “prescribe procedural rules for state courts’ adjudication of purely state-law claims.” Jinks, 538 U.S. at 464, 123 S.Ct. 1667. The Court construed the tolling provision as a substantive rule, not a procedural one, and on that basis declined to address the state-sovereignty question. Id. at 465, 123 S.Ct. 1667 (“[T]he tolling of limitations periods falls on the ‘substantive’ side of the line. To sustain § 1367(d) in this case, we need not (and do not) hold that Congress has unlimited power to regulate practice and procedure in state courts.”).
In Pierce County v. Guillen, 537 U.S. 129, 132-33, 123 S.Ct. 720, 154 L.Ed.2d 610 (2003), the Court rejected a constitutional challenge to 23 U.S.C. § 409, which protects traffic-hazard data “compiled or collected” by the States pursuant to certain federal highway safety programs from being used as evidence in federal and state court proceedings. The Court held that § 409 was a proper exercise of Congress’s power under the Commerce Clause to regulate the channels of interstate commerce — there, the nation’s highways. Id. at 146-47, 123 S.Ct. 720. In a footnote the Court noted that the challengers had also argued that § 409 “violates the principles of dual sovereignty embodied in the Tenth Amendment because it prohibits a State from exercising its sovereign powers to establish discovery and admissibility rules to be used in state court for a state cause of action.” Id. at 148 n. 10, 123 S.Ct. 720. The Court declined to address the question because the lower court had not yet done so. Id.
No constitutional argument is raised here; this case presents only a question of statutory interpretation. Still, our statutory interpretation inquiry should be informed by important background principles of federalism. See Bond v. United States, — U.S. —, 134 S.Ct. 2077, 2090, 189 L.Ed.2d 1 (2014) (“[I]t is appropriate to refer to basic principles of federalism embodied in the Constitution to resolve ambiguity in a federal statute.”); see also Gregory v. Ashcroft, 501 U.S. 452, 460-61, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991).
My colleagues seem to acknowledge this point, if only implicitly. For example, they say that § 1692i “does not tell states how to organize or operate their court systems” or “directly control court procedures such as venue rules,” but instead “takes the state courts as it finds them.” Majority op. at 647-48, 649. I agree, but not because that limitation is clear from the text of the statute, which on its face establishes a uniform federal venue rule applicable to all actions to collect consumer debts, even state-law actions filed in state court. Section 1692i can function as written — as a venue rule — for debt-collection actions in federal court. But it can’t function that way for debt-collection actions in state court, or at least it probably can’t. Operating a judicial system is a core function of state government, and because the States have the sovereign authority to structure their court systems and establish their *653 own jurisdictional and procedural rules, we must give § 1692i an interpretive gloss— by saying that it “takes the state courts as it finds them” — in order to avoid serious constitutional difficulty.
So as applied to debt-collection actions in state court, § 1692i must be understood not as a venue rule but as a penalty on debt collectors who use state venue rules in a way that Congress considers unfair or abusive. See 15 U.S.C. § 1692k(a) (establishing a civil remedy for damages against any debt collector who “fails to comply with any provision of this subchapter”); see also 15 U.S.C. § 1692 (congressional findings and declaration of purpose). Even on this understanding, however, the statute is not free from constitutional doubt. If Congress lacks the authority to prescribe venue rules for the state courts, then it may also lack the authority to impose a federal penalty — in the form of a damages remedy — on litigants who do not file their state-court lawsuits where Congress says they must. In the final constitutional analysis, there may not be much difference between a federal law establishing a venue rule for state-law litigation in state court (probably unconstitutional) and a federal law establishing a damages remedy for not following a federally prescribed rule about venue in state court.
My colleagues note that “[t]he presence of the venue provision in the Act shows congressional dissatisfaction with allowing state law to determine where suits to collect consumer debts can be filed.” Majority op. at 640. No doubt that’s true, but this just highlights the constitutional question about the limits on Congress’s authority to regulate venue in the state courts. They say that § 1692i doesn’t “alter[] state rules governing jurisdiction and venue” but “merely imposes a limit on which state courts having jurisdiction and venue over a debt collector’s claim the debt collector may sue in, consistent with the policy of the federal law.” Id. In the next sentence, we are reassured that “[t]here is nothing unusual or untoward about requiring compliance with both state and federal rules.” Id. I’m not so sure that’s true in this context. The States have the sovereign authority to establish the jurisdictional and procedural rules that apply in their courts. Section 1692i overrides state venue rules, albeit indirectly, by imposing a federal damages remedy against state-court litigants who do not comply with the federal requirement.
Sometimes Congress can do indirectly what it lacks the power to do directly. See, e.g., South Dakota v. Dole, 483 U.S. 203, 210-11, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987) (holding that Congress may condition States’ receipt of a portion of their federal highway funds on adoption of a drinking age of 21). But it’s not clear to me that indirect regulation is permissible here. When construed as a penalty against debt collectors for litigating in state court in a way that violates federal policy, § 1692i may or may not be a valid exercise of Congress’s power under the Commerce Clause. But even an affirmative answer to that question “does not conclusively resolve the constitutionality of the [statute]”; the federalism question under the Tenth Amendment remains. Reno v. Condon, 528 U.S. 141, 149, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000) (holding that a law permissible under the Commerce Clause may still be unconstitutional under the Tenth Amendment). And we know that private parties, not just the States, may bring Tenth Amendment challenges. See Bond v. United States, — U.S. —, 131 S.Ct. 2355, 2363-64, 180 L.Ed.2d 269 (2011).
At a minimum § 1692i must be interpreted with the limits on Congress’s power in mind. This requires, as Judge Flaum suggests, sensitivity to the structure of *654 each State’s court system and the particular rules that govern its judicial subdivisions.
Returning to the interpretive problem at hand, to avoid liability under the FDCPA for violation of § 1692i, a debt collector must file suit in the “judicial district” in which the consumer resides or contracted the debt. As applied to debt-collection actions in state courts, the phrase “judicial district” is ambiguous because the States structure their court systems in a variety of ways. They may not use the term “district” to describe their judicial subdivisions, or they may use the term in a way that is not relevant to determining compliance with § 1692i.
I agree with Judges Hamilton and Pos-ner that the Black’s definition of “judicial district” — an interpretive tool prominently featured in Newsom — doesn’t help resolve the ambiguity. When the FDCPA was adopted, Black’s defined the term by reference to the territorial boundaries of the court’s authority and the presence of a court of general subject-matter jurisdiction. Judges Hamilton and Posner explain at length why this definition is not useful. I concur and have nothing to add to this discussion.
I agree as well that state venue rules play an important role in determining the appropriate “judicial district” under § 1692i in debt-collection actions filed in state court. So too does the structure of the State’s court system. Deciding how far to drill down into the State’s judicial hierarchy to find the relevant “judicial district” for purposes of § 1692i will depend in large part on how the State structures its court system for jurisdiction and venue over this kind of litigation.
Section 1692i is obviously aimed at promoting a venue convenient to the consumer debtor. In light of this manifest purpose, and in deference to the prerogatives of the States to set their own procedural rules, I agree that the phrase “judicial district or similar legal entity” is best understood to mean the judicial subdivision, defined by state law, that is relevant to determining venue in the court system in which the case is filed.[5] See Majority op. at 637, 642-43, 647-48. Judges Hamilton and Posner amply explain why this is so, and again I have nothing to add to their analysis.
This construction of § 1692i resolves the statutory ambiguity but does not remove the constitutional cloud. The constitutional question is for another day.
One final point before I conclude. Looking to state venue rules at the “system” level is important. In deference to the State’s right to set its own procedural rules for litigation in its courts, § 1692i probably can’t be understood to impose liability on debt collectors for using a court of record instead of a local court (i.e., a limited jurisdiction, nonrecord municipal 'court) if state law makes the former available. As Judges Hamilton and Posner explain, under Indiana law the small-claims jurisdiction of the Marion County township courts is concurrent with the county’s circuit and superior courts. Majority op. at 648; see also Ind.Code § 33-34-3-2. The township courts, however, are not courts of record. See Ind.Code § 33-34-1-3.
There may be practical and administrative impediments to filing a small-claims action in the Marion County circuit or superior courts, see Majority op. at 648-49, and debt collectors apparently prefer to use the township courts, see id. at 642-43, 649. But sensitivity to federalism sug *655 gests that § 1692i should not be interpreted to penalize debt collectors for suing in a court of record if state law gives them that option. In other words, the statute should not be interpreted to force debt collectors to use a local, nonrecord court system if state law permits them to sue in a court of record. That’s why compliance with § 1692i is determined by reference to the judicial subdivisions that are relevant for venue purposes in the court system in which the debt collector has chosen to file.
Accordingly, with these limitations and additional observations, I agree with the court’s interpretation of § 1692i and the decision to overrule Newsom, and I join the judgment reversing and remanding for further proceedings.

. I’ve used the term "judicial subdivision,” whereas my colleagues use the phrase “smallest geographic unit,” but I think we mean the same thing.